UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CHRISTOPHER BONDS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) No. 09 C 2726 |
| v. | ) |
| | ) Chief Judge Rubén Castillo |
| **DETECTIVE EDWIN FIZER and the** | ) |
| **CITY OF CHICAGO,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION AND ORDER

On May 20, 2010, this Court granted a motion for summary judgment in favor of Detective Edwin Fizer and the City of Chicago (collectively "Defendants"), and against Plaintiff Christopher Bonds on Plaintiff's claims of false arrest, malicious prosecution, and indemnification. (R. 43, Min. Entry; R. 44, Mem. Op. & Order.) Presently before the Court is Defendants' bill of costs pursuant to Federal Rule of Civil Procedure 54(d). (R. 48, Defs.' Bill of Costs.) For the reasons stated below, the Court awards Defendants $6,252.11 in costs.

## BACKGROUND

The Court assumes familiarity with the facts of this case as outlined in its May 20, 2010 Memorandum Opinion and Order granting summary judgment. *See Bonds v. Fizer*, 713 F. Supp. 2d 752, 756-59 (N.D. Ill. 2010). The facts are repeated here only as they pertain to this bill of costs. On June 28, 2008, Plaintiff was arrested by Detective Fizer for an alleged assault on Plaintiff's wife's elderly aunt who resided with him and his family at the time. (R. 1, Compl. ¶¶ 20-27.) The victim had been diagnosed with Alzheimer's and senile dementia earlier that year, (*id.* ¶ 8), and Plaintiff contends that she fabricated a story that Plaintiff had "roughed her up" and was trying to kill her, (*id.* ¶ 17). At the time of the incident, Plaintiff was an officer with the

National Guard and an instructor at Chicago State University. (*Id.* ¶ 30.) Plaintiff alleges that due to his occupational standing, several television stations ran stories on his arrest and showed a photo of Plaintiff on the nightly news. (*Id.*) The Chicago Tribune also ran an article detailing the allegations made in the arrest. (*Id.*)

Plaintiff asserts that the media attention damaged his reputation in his community and with the National Guard. (*Id.* ¶¶ 30-32.) He also contends that his arrest led to the loss of a promotion to major in the National Guard and $32,000.00 in potential income; to advance to the rank of major, he had to resign his commission in the National Guard and apply as a captain with the United States Army Reserve. (*Id.* ¶ 32.) Additionally, Plaintiff alleges that he incurred physical suffering, mental distress, monetary damages, and humiliation as a result of his arrest. (*Id.* ¶ 37.) On October 6, 2008, the victim of Plaintiff's alleged assault died and the charges against Plaintiff were dropped. (*Id.* ¶ 31.)

On May 4, 2009, Plaintiff filed a three-count complaint against Defendants. (*Id.*) In Count I, Plaintiff brought a 42 U.S.C. § 1983 claim for false arrest, detention, and imprisonment. (*Id.* ¶¶ 35-37). In Count II, Plaintiff brought a state law claim for malicious prosecution. (*Id.* ¶¶ 38-41). In Count III, Plaintiff brought a state law claim for indemnification against the City of Chicago. (*Id.* ¶¶ 42-44). On May 20, 2010, this Court granted a motion for summary judgment in favor of Defendants on Counts I and III, and dismissed Count II without prejudice for want of jurisdiction. (R. 44, Mem. Op. & Order.) Plaintiff appealed this Court's ruling on summary judgment, and on July 21, 2010, the Seventh Circuit dismissed his appeal for failure to timely pay the required docketing fee. (R. 52, Notice of Appeal; R. 59, Final Order Mandate.)

On June 18, 2010, Defendants filed a bill of costs pursuant to Rule 54(d), seeking $7,047.00 in total costs. (R. 48, Bill of Costs.) Specifically, Defendants request $190.95 for

exemplification and copies of papers; $307.00 for subpoena fees; $5,908.70 for deposition transcript costs; and $640.35 in other costs. (*Id.* at 1, 3.) Plaintiff responded to Defendants' bill of costs on September 14, 2010, (R. 64, Pl.'s Resp.), and Defendants replied on September 30, 2010, (R. 65, Defs.' Reply). Defendants' bill of costs is presently before the Court.

## LEGAL STANDARD

Pursuant to Rule 54(d), "costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). A district court may not tax costs under Rule 54(d), however, "unless a federal statute authorizes an award of those costs." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 447 (7th Cir. 2007) (citing *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441-43 (1987)). The list of recoverable costs authorized under 28 U.S.C. § 1920 include:

(1) Fees of the clerk and marshal;

(2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5) Docket fees . . . ; [and]

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services . . .

28 U.S.C. § 1920 (1)-(6).

Even if authorized by statute, however, "a cost must be both reasonable and necessary to the litigation for a prevailing party to recover it." *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008) (citing *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 454 (7th Cir. 1998); *McIlveen v. Stone Container Corp.*, 910 F.2d 1581, 1582-83 (7th Cir. 1990)). In

short, the determination of whether to tax costs against the losing party requires two inquiries: "(1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chi.*, 218 F.3d 816, 824 (7th Cir. 2000). Although there is a strong presumption that the prevailing party will recover costs, *Park v. City of Chi.*, 297 F.3d 606, 617 (7th Cir. 2002), the "party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trs. of the Chi. Plastering Inst. Pension Trust v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009). Once the prevailing party demonstrates that particular costs should be allowed, the losing party then bears the burden to affirmatively show that the taxed costs are not appropriate. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005). Generally, only the losing party's inability to pay or misconduct by the prevailing party worthy of a penalty will suffice to justify denying costs. *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 945 (7th Cir. 1997) (citing *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988)); *see also Rivera v. City of Chi.*, 469 F.3d 631, 635 (7th Cir. 2006) (declining to abandon the indigence exception to Rule 54(d)). Ultimately, the decision of whether to award costs is within the Court's discretion. *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1409 (7th Cir. 1991).

**ANALYSIS**

Plaintiff disputes Defendants' calculations outlined in their bill of costs and argues that costs should not be awarded because: (1) the costs sought by Defendants are not recoverable; (2) Defendants request costs in excess of what they actually paid; (3) Defendants ultimately dropped all criminal charges against Plaintiff and thus it would be inequitable for him to pay costs; (4) Defendants were not the prevailing party on all counts, as the Court declined to exercise

4

jurisdiction over Plaintiff's pending state court claim; and (5) Plaintiff is indigent. (R. 64, Pl.'s Resp. at 2-7.) The Court addresses each of these arguments in turn.

I.      **Whether the "other costs" sought by Defendants are recoverable**

Plaintiff argues that Defendants seek costs that are not recoverable under federal law. (R. 64, Pl.'s Resp. at 2.) Plaintiff contends that such unrecoverable costs include travel reimbursement for Defendants' attorney ($17.00), costs for a subpoena of the alleged victim's health records ($216.35), and costs for the production of a DVD ($407.00). (*Id.*) These costs are listed under "other costs" on Defendants' bill of costs and total $640.35. (R. 48, Defs.' Bill of Costs at 1, 14.)

Defendants initially sought fees related to travel expenses incurred by their attorney totaling $17.00. (*Id.* at 14, 21-22.) Defendants now concede, however, that travel expenses incurred by counsel in traveling to and from witness depositions are not costs awarded under 28 U.S.C. § 1920, and therefore, voluntarily withdraw $17.00 in transportation fees from their bill of costs. (R. 65, Defs.' Reply at 2.)

Defendants seek $216.35 for costs for a subpoena of the alleged victim's health records. (R. 48, Defs.' Bill of Costs at 14, 17.) Specifically, Defendants served a subpoena on Little Company of Mary Hospital for the victim's medical records and now seek the costs associated with receiving copies of those records. (*Id.* at 17; R. 65, Defs.' Reply at 2-3.) Defendants contend that the costs for these records were a "necessary expense" and should be awarded. (R. 65, Defs.' Reply at 3.)

The prevailing party may recover costs for copies of materials that were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). This includes costs for copies related to discovery and copies of pleadings, motions, and memoranda submitted to the court. *McIlveen,*

5

910 F.2d at 1584; *Swan Lake Holdings, LLC v. Yamaha Golf-Car Co.*, No. 3:09-CV-228, 2011 WL 1869389, at *3 (N.D. Ind. May 13, 2011); *Nilssen v. Osram Slyvania, Inc.*, No. 01 C 3585, 2007 WL 257711, at *6 (N.D. Ill. Jan. 23, 2007). Specifically at issue here, "[a]warding the costs of obtaining copies of medical records necessary for a case is 'clearly allowable' in the Seventh Circuit." *Gillman v. Crown Equip. Corp.*, No. 95 C 1914, 1996 WL 556706, at *5 (N.D. Ill. Sept. 26, 1996) (citing *Finchum v. Ford Motor Co.*, 57 F.3d 526, 534 (7th Cir. 1995); *M.T. Bonk Co. v. Milton Bradley Co.*, 945 F.2d 1404, 1410 (7th Cir. 1991)); *see also Lewis v. City of Chi.*, No. 04 C 6050, 2012 WL 6720411, at *8 (N.D. Ill. Dec. 21, 2012) (Castillo, J.) (finding that "copy fees are properly recoverable [if] they [are] paid to medical service providers for medical records that [are] necessary to the case"); *Dishman v. Cleary*, 279 F.R.D. 460, 465 (N.D. Ill. 2012) (finding that the fees paid to a hospital for medical records were "recoverable as costs for records which were reasonably necessary at trial").

Defendants contend that the medical records were used to support their Local Rule 56.1 Statement of Facts for their motion for summary judgment. (R. 65, Defs.' Reply at 3; R. 29, Defs.' Local Rule 56.1 Statement of Facts ¶¶ 11, 19-23, 54.) Additionally, Defendants maintain that Detective Fizer relied on these records to determine that he had probable cause to arrest Plaintiff. (R. 65, Defs.' Reply at 3.) Because the medical records were used to support Defendants' assertion that Detective Fizer had probable cause to arrest Plaintiff, this Court finds that the copies of those records were reasonably necessary to the case. Defendants have submitted an invoice from a medical service provider that sufficiently details the fees and costs for copying the medical records. (R. 48, Defs.' Bill of Costs at 17.) Accordingly, the Court awards Defendants $216.35 for photocopies of the alleged victim's medical records.

6

Defendants additionally seek $407.00 for costs related to the production of a media DVD. (R. 48, Defs.' Bill of Costs at 14, 19.) Specially, Defendants paid $407.00 to Cision U.S., Inc. for the production of a DVD containing media coverage of Plaintiff's arrest. (*Id.* at 19.) Defendants claim that because "the news broadcasts of [Plaintiff's] arrest were a critical component of his damages," they "subpoenaed copies of these news broadcasts in order to determine whether they existed and what information they actually contained." (R. 65, Defs.' Reply at 3.) Defendants argue that this was a necessary expense and should be allowed as a recoverable cost for "printing" under 28 U.S.C. § 1920(3). (*Id.*)

Defendants fail to demonstrate how the production of a DVD containing media coverage can be classified as "printing" under Section 1920(3). Printing under Section 1920(3) generally refers to printing documents. *See Massuda v. Panda Express, Inc.*, No. 12 CV 9683, 2014 WL 148723, at *3 (N.D. Ill. Jan. 15, 2014); *Dishman*, 279 F.R.D. at 469 (allowing the costs for printing a paper copy of each docket entry). Media coverage does not fall into any of the six categories of recoverable costs under Section 1920. Defendants do not cite to any case law where courts have awarded costs to the prevailing party for television news coverage that was copied onto a DVD, and the Court did not find any authority to support awarding such costs. Thus, the Court declines to award DVD production costs in the amount of $407.00 to Defendants.

Accordingly, this Court finds that $424.00 of Defendants' "other costs" are not recoverable and will be subtracted from their total costs.

**II.      Whether Defendants have requested costs in excess of what they have paid**

Plaintiff argues that Defendants seek subpoena and deposition costs in excess of what the invoices attached to their bill of costs state. (R. 64, Pl.'s Resp. at 2.) Defendants concede that

7

some of the charges listed on the invoices do not match the costs outlined in their bill of costs. (R. 65, Defs.' Reply at 4.) Specifically, the invoices from LaSalle Process Servers for subpoena fees totals $300.00, but the amount listed by Defendants is $307.00; the invoice for the deposition transcript of Officer Shannon totals $187.50, but Defendants requested $253.45; the invoices for the deposition transcript of Vincent Waller total $315.41, but the amount listed by Defendants is $377.55; the invoices for the deposition transcript of Stephanie Williams total $364.90, but Defendants requested $414.05; the invoice for the deposition transcript of Dr. Husseni totals $420.00, but the amount listed by Defendants is $516.25; and the invoice for the deposition transcript of Martha Kross totals $393.00, but Defendants requested $483.40. (R. 48, Defs.' Bill of Costs at 13, 15-16, 24, 27, 28, 30-32.) In all, Defendants concede to a miscalculation in the amount of $370.89, which will be subtracted from the total amount of their costs. (R. 65, Defs.' Reply at 4.)

Defendants argue that their deposition expenses "were reasonably necessary for the defense of their case" because they needed copies of the deposition transcripts to prepare their motion for summary judgment. (R. 65, Defs.' Reply at 3-4.) Plaintiff does not dispute the remaining costs of the deposition transcripts and the Court finds that the costs were both reasonable and necessary to the litigation. *See Little*, 514 F.3d at 702. Additionally, Plaintiff does not dispute the remaining costs for subpoena fees and the costs for exemplification and copies of papers; the Court finds that these costs were also reasonable and necessary to the litigation. *See id.*

### III. Whether it would be inequitable to award Defendants costs because the criminal charges against Plaintiff were ultimately dropped

Plaintiff argues that even if costs to Defendants are recoverable, "it would be inequitable to require Plaintiff to pay costs under the circumstances." (R. 64, Pl.'s Resp. at 3.) Specifically,

Plaintiff contends that his arrest by Detective Fizer hinged on false accusations made by an individual diagnosed with dementia and Alzheimer's disease, and that his arrest should not have occurred. (*Id.* at 4.) Plaintiff contends that as a result of his arrest, he lost his job at a state university, lost a promotion with the National Guard, remained unemployed for 18 months, and was ultimately forced to declare bankruptcy. (*Id.*) Plaintiff argues that all the "financial and personal setbacks [he] suffered are directly attributable to [his] arrest by Defendant" and emphasizes that all charges related to that arrest were ultimately dropped. (*Id.*) According to Plaintiff, Defendants "should not be rewarded for their own bad acts which led to the instant litigation." (*Id.* at 5.)

The Seventh Circuit recognizes only two situations which may warrant the denial of costs. *Mother & Father v. Cassidy*, 338 F.3d 704, 708 (7th Cir. 2003). The first situation involves a finding that the losing party is indigent. *Id.* Plaintiff's arguments regarding his alleged indigence are addressed in detail in Section V below. The second situation which may warrant the denial of costs is "misconduct by the prevailing party that is worthy of a penalty," such as "calling unnecessary witnesses, raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings." *Congregation of the Passion*, 854 F.2d at 222; *see also Dishman*, 279 F.R.D. at 465 (quoting *Collins v. United States*, No. 03 C 2958, 2008 WL 4549303, at *1 (N.D. Ill. Apr. 24, 2008)).

Despite Plaintiff's allegations, Defendants did not engage in "bad acts" or any type of misconduct in this case. This Court has already found that Detective Fizer had probable cause to arrest Plaintiff and thus did not violate Plaintiff's Fourth Amendment rights. *Bonds*, 713 F. Supp. 2d at 760-64. In making this determination, this Court noted that the fact that the alleged victim suffered from dementia did not automatically render her accusations untrustworthy, and

Detective Fizer's knowledge of her dementia did not undermine his probable cause analysis. *Id.* at 763. Additionally, the Court finds that Defendants have not engaged in any of the examples of misconduct outlined by the Seventh Circuit. *See Congregation of the Passion*, 854 F.2d at 222. While the Court recognizes and sympathizes with the hardships Plaintiff and his family have experienced as a result of his arrest, it cannot find that Defendants engaged in any type of misconduct that is worthy of a penalty. Accordingly, the Court will not deny Defendants their legal right to recover court costs. *See Dishman*, 279 F.R.D. at 465 (rejecting plaintiff's argument that it would be inequitable to hold him responsible for costs because defendants did not engage in misconduct in defending the case).

In an effort to avoid this result, Plaintiff argues that a court may deny costs if "'it would be inequitable under all the circumstances' to tax the non-prevailing party with the burden of costs." (R. 64, Pl.'s Resp. at 3) (quoting *USM Corp. v. SPS Techs., Inc.*, 102 F.R.D. 167, 172 (N.D. Ill. 1984) (finding that fraud and bad faith on the part of defendant would make it inequitable to award costs)). Plaintiff, however, misconstrues and overly broadens the applicability of the quotation from *USM*. The quotation derives from a Sixth Circuit case which goes on to list examples of when it would be inequitable to award costs:

> Examples will be found in cases where the amount of taxable costs actually expended were unnecessary or unreasonably large under the circumstances, where the denial of costs was in the nature of a penalty for injecting unmeritorious issues into the case or unnecessarily prolonging the trial of the case, or where the judgment recovered was insignificant in comparison to the amount sought and actually amounted to a victory for the defendant.

*Lichter Foundation, Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959). None of these situations apply to the case at hand, and unlike the defendant in *USM*, Defendants here have not been found to have committed fraud or acted in bad faith. Thus, the Court finds Plaintiff's reliance on *USM* unavailing and rejects this argument for the denial of costs.

## IV. Whether the Court needed to grant summary judgment on all counts in order for Defendants to recover their costs

Plaintiff additionally argues that it would be inequitable to award costs to Defendants because summary judgment was not granted on the state law malicious prosecution claim and "[t]he majority of the costs Defendants seek . . . are for items which Defendants will be required to use to defend against Plaintiff's malicious prosecution case in state court." (R. 64, Pl.'s Resp. at 5.)

Under Rule 54(d), costs are awarded to the "prevailing party." Fed. R. Civ. P. 54(d)(1). The Seventh Circuit has defined "prevailing party" as "the party who prevails as to the *substantial* part of the litigation." *Testa v. Vill. of Mundelein, Ill.*, 89 F.3d 443, 447 (7th Cir. 1996) (citing *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1015 (7th Cir. 1985)); *see also U.S. Fidelity & Guar. Co. v. Shorenstein Realty Servs., L.P.*, 803 F. Supp. 2d 920, 923 (N.D. Ill. 2011) ("When a party obtains substantial relief, it prevails even if it does not win on every claim."). Additionally, "where there is a dismissal of an action, even where such dismissal is involuntary and without prejudice, the defendant is the prevailing party." *First Commodity Traders*, 766 F.2d at 1015 (quoting 6 J. Moore, W. Taggart & J. Wicker, *Moore's Federal Practice* ¶ 54.70[4] (2d ed. 1985)).

Here, Defendants are the prevailing party as this Court granted their motion for summary judgment on Counts I and III and dismissed Count II, Plaintiff's malicious prosecution claim, without prejudice. *Bonds*, 713 F. Supp. 2d at 765-66. Given the time that has elapsed since this Court's order granting summary judgment, Plaintiff's malicious prosecution claim may no longer be pending in state court. Regardless, even if the claim were still pending in state court, that would have no effect on this Court's determination of costs because Defendants have won the substantial part of the litigation in federal court. *See Testa*, 89 F.3d at 447. Therefore, as the

11

prevailing party, Defendants are entitled to costs. *See* Fed. R. Civ. P. 54(d)(1). The Court finds that Plaintiff's argument that it would be inequitable to make him pay for costs while his claim is pending in state court is conclusory and without merit. Accordingly, Plaintiff has failed to meet his burden of showing that the costs are inappropriate. *See Beamon*, 411 F.3d at 864.

## V. Whether Plaintiff is indigent

Finally, Plaintiff argues that it would be unreasonable to levy costs against him because he is indigent. (R. 64, Pl.'s Resp. at 5.) Plaintiff contends that although he is currently employed, he and his wife are unable to pay the costs resulting from the instant litigation. (*Id.* at 6.) Plaintiff's wife is unemployed and Plaintiff contends that her unemployment has compounded the financial difficulties to him and his family. (*Id.*) Plaintiff further states that he will be unable to pay Defendants' costs in the future as his employment options and earning capabilities are limited as a result of his arrest. (*Id.*)

A losing party's inability to pay is an appropriate factor to consider when granting or denying taxable costs. *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983) (citing *Delta Airlines, Inc. v. Colbert*, 692 F.2d 489, 491 (7th Cir. 1982)). Although a court must be "[m]indful of the presumption that costs are to be awarded to the prevailing party under [Rule 54(d)], . . . this presumption may be overcome by a showing of indigency." *Id.* (internal citation omitted). Nonetheless, "indigence does not automatically excuse the losing party from paying the prevailing party's costs." *Rivera*, 469 F.3d at 635. When ruling on a losing party's assertion that he is indigent and therefore unable to pay the prevailing party's costs, courts engage in a two-step analysis. *Id.* First, the Court "must make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'" *Id.* (quoting *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)). The losing party bears the burden of

providing the Court with "sufficient documentation to support such a finding." *Id.* (quoting *Chapman v. AI Transport*, 229 F.3d 1012, 1039 (11th Cir. 2000)). "This documentation should include evidence in the form of an affidavit or other documentary evidence of income and assets, as well as a schedule of expenses." *Id.* Second, the Court "should consider the amount of costs, the good faith of the losing party, and the closeness and difficulty of the issues raised by a case when using its discretion to deny costs." *Id.* The Seventh Circuit has made clear "that the [indigence] exception is a narrow one." *Id.* at 636.

In support of his indigence claim, Plaintiff submitted an affidavit dated September 10, 2010, attesting that, "due to [his] arrest [he] lost [his] job with the Illinois National Guard" and "remained unemployed for approximately 18 months." (R. 64-1, Ex. A., Pl.'s Aff. at 2.) Plaintiff attests that due to his employment situation, "[his] wife and [he] were forced to declare bankruptcy," (*id*), and that his wife is also currently unemployed, (*id*. at 3). Plaintiff also attests that "as a result of [his] arrest and [the] charges on [his] record, [his] prospects for career advancement in the U.S. Armed Services are severely limited." (*Id.*) Plaintiff concedes that "[he] [is] currently stationed in Kuwait with the U.S. Armed Services," (*id*), but provides no details as to his position or salary. Additionally, Plaintiff submitted a Chapter 13 Statement of Current Monthly Income ("Chapter 13 Statement") dated October 9, 2009, outlining his and his wife's income for a six-month period from April 2009 to September 2009. (R. 64-2, Ex. B, Ch. 13 Statement.)[1]

Plaintiff is currently employed with the U.S. Armed Services and while he does not provide specific details about his employment, the Court assumes he is receiving a salary. His

---

[1] The Court is mindful of the time that has passed since Plaintiff filed his response to Defendant's bill of costs with these attached exhibits, and makes its determination of Plaintiff's current financial status for purposes of this bill of costs using the documents Plaintiff provided then.

wife is unemployed but she testified in her deposition on February 19, 2010, that she is receiving unemployment compensation in the amount of $1,118.00 every two weeks, and Plaintiff has not indicated that these payments have stopped. (R. 65-1, Ex. 2, Zephye Myers-Bond Dep. at 26:05-09). Additionally, Plaintiff testified in his deposition on December 17, 2009, that he owns property from which he is receiving rental income in the amount of $1,845.00 every month, and he has not indicated that he has stopped collecting this rental income. (R. 65-1, Ex. 1, Pl.'s Dep. at 52:14-18; *see also* R. 64-2, Ex. B, Ch. 13 Statement at 8-9.) Taking all this information into account, the Court cannot find that Plaintiff is currently indigent and incapable of paying costs. *See Falcon v. City of Chi.*, No. 98 C 4028, 2000 WL 1231403, at *1 (N.D. Ill. Aug. 28, 2000) ("the losing party must demonstrate actual indigency, not merely limited financial resources"). Further, the fact that Plaintiff has not provided any statements of current assets and expenses only serves to weaken his indigency argument. *See Rivera*, 469 F.3d at 635 ("Requiring a non-prevailing party to provide information about both income/assets and expenses will ensure that district courts have clear proof of the non-prevailing party's dire financial circumstances."); *see also Lewis*, 2012 WL 6720411, at *3 (finding that because plaintiff did not provide a schedule of expenses or any other documentary evidence of her income or assets, she failed to provide sufficient documentation to support her indigency claim).

Additionally, although Plaintiff's Chapter 13 Statement highlights a cash flow disparity in his household for the six months in 2009, it does not offer evidence that either Plaintiff or his wife will be unable to earn income in the future. *See McGill*, 18 F.3d at 459-60 (affirming the district court's taxation of costs on the non-prevailing plaintiff, a state prisoner, who claimed he was indigent because the Seventh Circuit was "not convinced on the record that [the plaintiff] will not ever be able to pay the order imposing costs"); *Denson v. Ne. Ill. Reg'l Commuter R.R.*

14

*Corp.*, No. 00 C 2984, 2003 WL 21506946, at *1 (N.D. Ill. June, 27, 2003) (awarding costs even though the plaintiff was indigent because she did not demonstrate an inability to pay costs in the future). Plaintiff attests in his affidavit that his future earning potential will be "severely limited" as a result of his arrest, but he fails to provide any evidence to support this contention. (*See* R. 64-1, Ex. A, Pl.'s Aff. at 3.) Plaintiff's affidavit, by itself, is insufficient to prove an inability to pay future costs. *See Fairley v. Andrews,* No. 03 C 5207, 2008 WL 961592, at *4 (N.D. Ill. Apr. 8, 2008) (concluding that plaintiff was not indigent because he had not provided the court with sufficient documentation about his ability to pay for costs in the future, even though his affidavit made it clear that his household expenses were more than his present income); *see also Tumas v. Bd. of Educ. of Lyons Twp. High Sch. Dist. No. 204*, No. 06 C 1943, 2008 WL 611601, at *1 (N.D. Ill. Feb. 29, 2008) (finding that plaintiff did not demonstrate actual indigency and an inability to pay costs now or in the future where plaintiff argued that the imposition of costs would be an extraordinary financial burden).

While the Court sympathizes with Plaintiff's circumstances, it cannot determine that Plaintiff is indigent and unable to pay costs now or in the future on the basis of the documentation provided. Accordingly, the Court denies Plaintiff's request for relief from taxation under this exception.

## CONCLUSION

For the foregoing reasons, Defendants' bill of costs (R. 48) is GRANTED in part, and Defendants are awarded costs in the amount of $6,252.11.

ENTERED: /s/ Rubén Castillo
Chief Judge Rubén Castillo
United States District Court

Dated: September 24, 2014